UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DIANE DALPIAZ ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:17 CV 1970 DDN |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

This action is before the Court for judicial review of the final decision of the Commissioner of Social Security finding that plaintiff Diane Dalpiaz is not disabled and, thus, not entitled to disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the decision of the Commissioner is affirmed.

## BACKGROUND

Plaintiff was born on July 12, 1962. (Tr. 166). She filed her application for a period of disability and DIB on December 13, 2013. (Tr. 166). Plaintiff alleged a disability onset date of July 25, 2012, and subsequently amended it to September 23, 2013. (Tr. 181). Plaintiff alleges that she suffers from back and neck pain, bulging discs, jaw pain, headaches, arthritis, fibromyalgia, Sjogren's Syndrome, bunion pain, and high blood pressure. (Tr. 66-67, 77). Her application was denied on February 19, 2014, and she requested a hearing before an administrative law judge ("ALJ"). (Tr. 77, 84).

A hearing was held on August 26, 2015, where plaintiff and a vocational expert ("VE") testified. (Tr. 33-65). By decision dated March 21, 2016, the ALJ found that plaintiff was not disabled under the Social Security Act. (Tr. 7-18). The ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform a full range of sedentary work, including her past work. (Tr. 18).

On May 8, 2017, the Appeals Council of the Social Security Administration denied plaintiff's request for review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner to be reviewed in this case. (Tr. 1-5). Plaintiff argues that the ALJ's decision is not supported by substantial evidence and is inconsistent with the Social Security Act, its regulations, and applicable case law. (Doc. 24). She asks that the ALJ's decision be reversed and an award of benefits entered or that the case be remanded for further proceedings. (*Id.* at 10).

## ADMINISTRATIVE RECORD

*A. Relevant Medical History*

On August 21, 2012, plaintiff received a radiographic exam of her cervical spine, lumbar spine, thoracic spine, and left hip. The radiographs of her cervical spine showed mild degenerative disc disease at C5-C6. The radiographs of her lumbar spine were interpreted to be unremarkable and those of her thoracic spine and left hip showed no acute abnormalities. (Tr. 298-301).

On August 2, 2013, plaintiff was examined by Kyle Sinclair, M.D. Plaintiff reported diffuse back pain that had been deteriorating since 2005 or 2006 and was exacerbated by lifting, sitting, standing, and entering or exiting a car. Plaintiff sought Dr. Sinclair's opinion as to whether her symptoms represented a case of Sjogren's syndrome. Dr. Sinclair reported no swelling in the claimant's hands or elbows and found all of her joints cool and without redness. He found point tenderness of the lumbar spine with radiation to the left thigh, with flexion and internal/external rotation of the left hip. However, he found 5/5 strength measurements of both upper and lower extremities, intact sensation in plaintiff's distal extremities, and normal reflexes in her lower extremities.

Based on this examination, Dr. Sinclair declined to diagnose plaintiff with Sjogren's syndrome. Plaintiff also received x-rays of her spine and left hip, again showing mild degenerative disc disease at C5-C6 and no abnormalities elsewhere. (Tr. 270-272). On September 23, 2013, plaintiff received an MRI of her lumbosacral spine, the results of which were substantially unchanged from a prior MRI study conducted in 2006. (Tr. 270-71, 277).

On October 14, 2015, plaintiff was examined by Alan Morris, M.D. Plaintiff reported low back pain, neck pain, right foot pain, a history of fibromyalgia and Sjogren's syndrome, and stiffness of both hands. She continued to report that her pain was exacerbated by standing and walking, that it became so acute on given days that it necessitated bed rest, and that it had been deteriorating since 2005 or 2006. She reported that she sought weekly treatment with a chiropractor and that such treatment was helpful in alleviating her pain. Dr. Morris observed that plaintiff's movements were slow and guarded and that she had a constant pained facial expression and vocally expressed pain throughout the consultation. (Tr. 381-384).

Dr. Morris found that plaintiff had 10 of 18 possible tender points. He observed that plaintiff was able to independently sit, stand straight, and move on and off of the examining table; walk 50 feet without a cane; heel walk, toe walk, and tandem gait in a normal manner; squat to 140 degrees bilateral knee flexion, albeit using her hands to push herself back to the upright position; and make a full fist, opposing her thumb to all digits. He also observed that plaintiff had normal ranges of ankle, cervical, shoulder, elbow, wrist, and hand motion; 3/4 deep tendon reflexes at knees and ankles; 5/5 anterior tibial strength; and 5/5 bilateral grip strength. On the basis of this examination, Dr. Morris diagnosed plaintiff as having low back pain and neck pain. (Tr. 381-85, 392-93).

After concluding his examination, Dr. Morris opined that plaintiff was limited to no more than occasionally lifting and carrying up to ten pounds; sitting and standing no more than fifteen minutes continuously; sitting no more than five hours total in an eight-hour workday and standing no more than two hours total in an eight-hour workday; walking no more than ten minutes continuously and no more than one hour total in an

3

eight-hour workday; no more than frequently reaching overhead and in all other directions; no more than occasionally handling, fingering, feeling, pushing, or pulling bilaterally; no more than frequently operating foot controls; no more than occasionally climbing ramps and stairs; never climbing ladders and scaffolds; no more than occasionally balancing, stooping, kneeling, crouching and crawling; and no more than occasionally working at unprotected heights, working with or around moving mechanical parts, and operating a motor vehicle. He further opined plaintiff would be limited to no more than occasional exposure to humidity and wetness, dust, fumes, odors and pulmonary irritants, extreme heat and cold and vibrations. (Tr. 386-91).

### B. *Evidentiary Hearing*

At the evidentiary hearing in August 2015, plaintiff testified that she last worked as a funeral service assistant from December 2009 through September 2010. (Tr. 39). Prior to that, she worked as a customer service representative for 25 years, from November 1982 to July 2008. (Tr. 39, 188). Both occupations were sedentary, defined as follows:

> [Lifting] no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). Plaintiff testified that she was laid off from her customer service position as a result of outsourcing, whereupon she began seeking other employment. (Tr. 44). She testified that she was employed as a funeral service assistant on an as-needed basis and that her employment became increasingly sporadic due to a rising consumer preference for cremation instead of burial. (Tr. 44-45).

In support of her claim, plaintiff testified that she was now unable to work due to neck pain and to back pain that radiates to her right leg. She testified that this pain causes discomfort while seated, so that she has to lean to the left and switch positions frequently.

4

She has difficulty sitting, so that she has to switch positions frequently and makes it "hard to even watch a television show"; difficulty walking; discomfort exiting her car; discomfort performing household chores such as vacuuming and mopping, so that she no longer performs them as frequently as she used to; and difficulty maintaining her toenails, due to an inability to cross her legs. Plaintiff further testified that she experiences "tightness in her hands" and headaches three to four times a week. (Tr. 56). Plaintiff testified that the intensity of the pain reached levels warranting calling for emergency medical assistance multiple times per week. (Tr. 44-58).

Plaintiff testified that she could walk and stand for periods of 15 to 30 minutes. She stated that she receives ongoing treatment from a chiropractor and had previously tried several prescription pain medications, but discontinued their use when they produced side effects of nausea, dizziness, or skin discoloration. Instead, she makes daily use of nonprescription pain medications such as Aspirin and Tylenol. She cooks her own meals and drives for purposes of weekly grocery shopping and church attendance, as well as infrequent family visits. (*Id.*)

After her testimony was concluded, plaintiff suddenly stated she was starting to get "a sick feeling," and asked to be excused from the hearing. (Tr. 61-62). With her and her attorney's consent, the ALJ continued the hearing in her absence for purposes of questioning the vocational expert. (*Id.*)

The ALJ posed the following hypothetical:

> If you assume a person of [plaintiff's] age, education and work experience, who can lift up to 20 pounds occasionally, and lift or carry up to 10 pounds frequently, stand or walk for about two hours and sit for up to six hours in an eight hour work day, with a sit/stand option defined as allowing the person to alternate between sitting and standing positions at 30 minute intervals throughout the day, would said hypothetical individual be able to perform [plaintiff's] past work?

5

(Tr. 59-60). This sit/stand option was subsequently removed from the hypothetical per testimony from the plaintiff that her past relevant work did not make standing desks available. (Tr. 60).

The VE testified that such an individual could perform past relevant work and identified several equivalent sedentary data-entry jobs for which she had transferable skills, including data entry clerk and clerk typist. The VE testified that job numbers for these occupations were, respectively, approximately 190,000 and 77,000 nationally. (Tr. 62-63).

## ALJ DECISION

The ALJ first found that plaintiff had not engaged in substantial gainful activity since her alleged amended onset date. (Tr. 12). At Step Two, he found that plaintiff suffers from the severe impairments of degenerative disc disease and hypertension, while finding that the alleged impairments of Sjogren's syndrome, arthritis, and fibromyalgia are non-severe. (*Id.* at 12). He further found at Step Three that none of these impairments met or equaled an impairment listed in the Commissioner's regulations. *Id.* At Step Four, the ALJ found that plaintiff retained the RFC to perform the full range of sedentary work as defined in 20 CFR 404.1567(a). (Tr. 13). In making that determination, he relied on the plaintiff's own testimony, the opinion evidence of the vocational expert, and the objective medical evidence in the record. *Id.*

Specifically, he noted that the results of objective medical testing when plaintiff was employed full-time were substantially the same as results obtained after plaintiff's alleged onset date. (Tr. 13-15). The ALJ gave the opinion of Dr. Morris little weight, finding Dr. Morris' functional limitations report "to be inconsistent with his 'diagnoses' of back pain and neck pain which are symptoms; not objective diagnoses and are inconsistent with his observations and clinical findings noted in the body of his examination report." (Tr. 15-16). The ALJ found the evidence in the record insufficient to support allegations of a severe and debilitating impairment, and instead concluded that plaintiff suffered "at best, ailments that appear troublesome, but do not impose limitations

of such significance as to preclude sustained competitive employment at the sedentary level." (Tr. 16). The ALJ emphasized that there was no evidence in the record plaintiff required surgery or hospitalization and none of her physicians ever recommended that she not seek employment. (Tr. 16). He noted that plaintiff testified she left her two most recent jobs not for health reasons but due to work availability: she was first laid off and then left her second job because of a lack of hours. (Tr. 17). The ALJ found that plaintiff retained the ability to perform sedentary work, and he relied on VE testimony that a person with this ability could perform plaintiff's PRW as a wire transfer clerk to deny plaintiff's application for disability benefits. (Tr. 18).

## **GENERAL LEGAL PRINCIPLES**

In reviewing the denial of Social Security disability benefits, the Court's role is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* In determining whether the evidence is substantial, the Court considers evidence that both supports and detracts from the Commissioner's decision. *Id.* As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. *See Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011).

To be entitled to disability benefits, a claimant must prove that she is unable to perform any substantial gainful activity due to a medically-determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. §§ 423(a)(1)(D), (d)(1)(a); *Pate-Fires*, 564 F.3d at 932 (describing the five-step process).

Steps One through Three require the claimant to prove (1) she is not currently engaged in substantial gainful activity, (2) she suffers from a severe impairment, and (3)

7

her disability meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform her past relevant work (PRW). *Id.* at § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating she is no longer able to return to his PRW. *Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other jobs that exist in significant numbers in the national economy. *Id.*; 20 C.F.R. § 404.1520(a)(4)(v).

## **ANALYSIS**

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence and that he failed to properly evaluate the credibility of her testimony. (Doc. 24 at 3, 8). Specifically, plaintiff argues that the ALJ (1) drew impermissible inferences from the available medical records, and (2) failed to fully discuss plaintiff's credibility with the factors of *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984).

*A. The ALJ's RFC determination is supported by substantial evidence.*

Plaintiff argues that the ALJ's conclusion that plaintiff can perform sedentary work is based only on negative and not positive evidence; that is, the ALJ's decision should have pointed to medical evidence positively demonstrating plaintiff's ability to perform sedentary work, but rather only pointed to evidence discrediting opinions that she cannot perform sedentary work. (Doc. 24 at 4-8). The Court disagrees. First, plaintiff bears the burden of proving she cannot work. *See Hensley v. Colvin*, 829 F.3d 926, 931-32 (8th Cir. 2016). Second, the ALJ emphasized medical evidence positively suggesting that plaintiff could perform sedentary work. Specifically, plaintiff received MRI scans in 2006 and 2013. When plaintiff received the MRI in 2006, she was working

8

full time in a sedentary position. Her 2013 MRI was essentially unchanged. (Tr. 271, 277).

The ALJ properly gave little weight to Dr. Morris' limitations opinion because it was inconsistent with his own clinical examination results. *See Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) (finding substantial evidence where ALJ discounted medical opinion that was inconsistent with doctor's own clinical examinations). The limitations opinion *itself* is internally inconsistent; Dr. Morris opined that plaintiff could not sit or stand for more than 15 minutes at a time, but within the same form opined that plaintiff could go shopping. (Tr. 391). In fact, Dr. Morris opined that plaintiff could engage in every activity listed on that page. *Id.*

Other factors also support the ALJ's decision: Plaintiff continued to seek work in 2008 when her job was outsourced, and again in 2010 after her replacement job became too sporadic. (Tr. 39, 44). Her application for disability was filed in 2013, after years of additional, and unsuccessful, job searching. Her activities of daily living continued to include actions such as lawn-mowing, extended driving to visit family, and dining out two to three times a week, each of which is inconsistent with Dr. Morris' limitations opinion. (Tr. 210-14). *See Bryant v. Colvin*, 861 F.3d 779, 783 (8th Cir. 2017) (finding substantial evidence of RFC to perform full range of medium work where plaintiff lived alone and drove his car for purposes of shopping and church attendance). Additionally, although plaintiff testified that she experiences pain on a scale of seven to nine out of ten approximately four days per week that would warrant emergency medical assistance (Tr. 44-58), there is no evidence in the record that plaintiff was ever hospitalized or sought emergency medical assistance. And her reports to medical providers were different; for example, on March 9, 2015, when asked to quantify her pain, she rated it at zero. (Tr. 362-63).

An ALJ may not draw upon his own inferences from medical reports, *see Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000), but there is "no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d at 932. As for the requirements of *Nevland* that there be a specific opinion positively

9

demonstrating how the plaintiff's impairments limit her abilities in the workplace, those apply only at Step Five, where the burden shifts to the Commissioner; in plaintiff's case the analysis ended at Step Four because the ALJ found that plaintiff was capable of performing her past work. *See, e.g., Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). The ALJ's RFC finding was based on substantial evidence in the record and remand is not warranted.

### B. *The ALJ properly evaluated the credibility of plaintiff's testimony.*

Plaintiff argues that the ALJ "must make a specific credibility determination, articulating reasons for discrediting the testimony, providing the inconsistencies and discussing the *Polaski* factors." (Doc. 24 at 8) (citing *Polaski v. Heckler*, 739 F.2d at 1322).[1] But plaintiff's argument misreads the *Polaski* factors as a mandatory list, each of which must be included in the ALJ's decision. Rather, the *Polaski* factors are suggested sources of information for the adjudicator to consult in evaluating the claimant; the crux of *Polaski* is that "[the] adjudicator is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Id.* (emphasis in original). In evaluating symptoms, the ALJ's decision must only "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p.

The ALJ considered plaintiff's work history, medication, and activities of daily living. (Tr. 13-14). He observed inconsistencies between plaintiff's reports of disabling pain and her relatively conservative treatment, including using only over-the-counter pain medications, wearing supportive shoes, and doing stretches. (Tr. 14). While plaintiff

---

[1] As of the date of the ALJ's opinion, the term "credibility" was rejected in favor of "symptoms," because "subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p.

10

testified that she discontinued using prescribed pain medications because they produced intolerable side effects, this does not explain why she did not continue to seek alternative prescriptions in the hopes that one would provide the desired pain relief without side effects. The ALJ reasoned that if plaintiff were experiencing pain and functional limitations at the level alleged, "[a] reasonable individual would conclude . . . she would continue to seek prescription pain medication that was effective and tolerable." (Tr. 17). The ALJ pointed to multiple treatment notes, the fact that plaintiff has not required surgery or hospitalization, and the results of objective medical testing in concluding that the record fails to support plaintiff's allegations regarding the severity of her symptoms. There is nothing unlawful in the way the ALJ evaluated plaintiff's symptoms.

## **CONCLUSION**

For the reasons set forth above, the final decision of the Commissioner of Social Security is affirmed. An appropriate Judgement Order is issued herewith.

/S/   David D. Noce
**UNITED STATES MAGISTRATE JUDGE**

Signed on September 24, 2018.